## THE TOWN OF EAST-HARTFORD *against* THE HARTFORD BRIDGE COMPANY:

### IN ERROR.

The ferry between the present towns of *Hartford* and *East-Hartford* was a beneficial franchise belonging to the ancient town of *Hartford*, in contradistinction to a burden imposed by law upon that town; subject, however, to the same legislative supervision and controul as other ferries in the state; and the right of the town of *Hartford* to such ferry, could not be constitutionally taken away, without compensation, or the consent of that town.

But in a suit brought by the *Hartford Bridge Company*, claiming, as bridge owners, the full enjoyment of their bridge franchise, as conferred by their several charters, and especially, as enlarged by the legislative resolve of 1818, without disturbance, against the town of *East-Hartford*, for a diversion of travel from the bridge, and a consequent loss of tolls thereat, by keeping up the ferry; it was held, that the present rights of the town of *Hartford* in the ferry, did not come in controversy, but the case turned solely on the right of *East-Hartford* thus to continue the ferry.

The resolve of 1818, providing, that after the *Hartford Bridge Company* shall have made the prescribed repairs, the ferries by law established between the towns of *Hartford* and *East-Hartford*, should be discontinued, if constitutional, enlarged the franchise of the *Bridge Company*, and secured to it the exclusive right to transport passengers across the river, at the bridge, and to receive the increased tolls therefor.

This resolve was not unconstitutional, on the ground of its being an attempt, by the legislature, to divest itself of the right of eminent domain; it being now quite too late to contend, that the legislature may not modify or restrict the future exercise of its own powers, as it always does, when it makes a contract which it cannot impair.

The provision in said resolve, which enacted, that the towns of *Hartford* and *East-Hartford* should never thereafter be permitted to transport passengers across the river, except upon the happening of the contingency therein mentioned, was, so far as *East-Hartford* was thereby affected, an essential part of a contract made with the *Hartford Bridge Company*, which could not be impaired, without compensation.

If the resolve in question was unconstitutional and void as to *Hartford*, yet, as the title of *East-Hartford* was not derived from *Hartford*, but was created entirely by the legislative act of division of the towns passed in 1783, which gave to *East-Hartford* only a right to use the ferry during the pleasure of the legislature, when the legislature declared its pleasure, as it did by said resolve, the right of *East-Hartford* ceased.

The vote of the town of *Hartford*, passed in *December,* 1835, declaring that the act of 1818, discontinuing the ferry, was unreasonable and unjust, and injurious to the interest of *Hartford*, and requesting the representatives from that town in the then next session of the General Assembly to use their exertions for the repeal of said act, did not invest *East-Hartford* with any rights, or in any way connect the interests of the two towns in the ferry privilege, so that these interests should be at all dependent upon each other; nor did such vote

*Hartford,*
June, 1845.

East-Hartford
*v.*
Hartford
Bridge Com-
pany.

give either force or character to the subsequent legislative resolve of 1836, purporting to repeal so much of the act of 1818 as abolished the ferry.

The principles of the former decision regarding the unconstitutionality and invalidity of the acts of 1836 and 1842, recognized and confirmed. [One judge dissenting.]

Pursuant to the advice of this court, in the case of *The Hartford Bridge Company* v. *The Town of East-Hartford,* 16 *Conn. R.* 151–179. the superior court, at an adjourned term in *April,* 1845, passed a decree, restraining the defendants, under a penalty of 10,000 dollars, from ever using the ferry between the towns of *Hartford* and *East-Hartford,* and from transporting passengers across *Connecticut* river between said towns, and receiving toll therefor, unless on the happening of the contingency mentioned in the resolve of 1818, and from doing any act or acts in relation thereto, which would divert the travel from said bridge, to the injury of the plaintiffs.    The defendants thereupon filed their motion that the record be transmitted to the supreme court of errors next to be holden in the county of *Hartford,* for a revision of the questions arising thereon, alleging, that the superior court erred and mistook the law, in proceeding to and rendering said final judgment; that the decree was erroneous, and that the injunction ought not to be granted.    This motion being allowed, the defendants, now plaintiffs in error, made a more particular assignment of errors, in substance as follows: 1. That said franchise of the ferries is admitted and alleged, by *The Hartford Bridge Company,* in their bill, as a vested right in the towns of *Hartford* and *East-Hartford,* by elder grant ; but the superior court has, by its decree, suppressed such franchise, and enjoined against its use ; and said decree is contrary to the constitution of the *United States.*

2. That said franchise is found, by the committee and by the court, to have been vested in said towns, by elder grant ; and said decree, suppressing the same, is contrary to the provisions of the constitution of the *United States.*

3. That that part of said act of the legislature of *Connecticut,* passed in the year 1818, which purports to suspend, discontinue and suppress said franchise, and the prior grant thereof to the towns of *Hartford* and *East-Hartford,* and prohibiting the use thereof to either of said towns, is repug-

nant to the constitution of the *United States*, and in violation thereof; and said decree upholds said unconstitutional provision, in derogation of said elder grant.

*Hartford,*
June, 1845.

East-Hartford
*v.*
Hartford
Bridge Company.

4. That said act of the legislature of *Connecticut*, passed in the year 1836, rescinding said unconstitutional prohibition contained in said act of 1818, is a renewed grant, recognition and confirmation of said elder title of said franchise, and is protected by the provisions of said constitution; but said decree abrogates and suppresses said renewed grant, whereas said court ought, by its decree, to have upheld the same.

5. That said act of the legislature of *Connecticut*, passed in the year 1842, recognizing and restoring said elder grant of said franchise, is a valid and constitutional grant to said original grantees and owners thereof; and said decree suppressing the same, is contrary to the constitution of the *United States*.

6. That said act of the legislature of *Connecticut*, passed in the year 1841, purporting to repeal said act of 1836, was repugnant to the constitution of the *United States*, and void; but said superior court adjudged the same to be valid.

7. That said act of 1818 was intended, by said legislature, to prohibit the use of said franchise, by either of said towns of *Hartford* and *East-Hartford*, except under certain circumstances, when such use was to be continued by said towns; and it was not intended to transfer the title from one of said towns to the other, and, whether void or not void, it cannot have that effect; and said court ought so to have decreed, and to have held, that said franchise continued to be vested equally in both of those towns.

8. That said act of the legislature of *Connecticut*, passed in the year 1836, with the consent and by the procurement of said towns of *Hartford* and *East-Hartford*, and said act passed in the year 1842, restoring said former act, were valid and declaratory laws, and enacted and declared, with the assent of said towns, that the one half of said franchise was vested in said town of *Hartford*, and the other half in said town of *East-Hartford*; but said superior court adjudged said acts to be inoperative and void, and that said franchise was vested wholly in said town of *Hartford*.

9. That it was not material whether said ferry franchise was vested in one or both of said towns, as such prohibition

*Hartford,*
June, 1845.
_____
East-Hartford
*v.*
Hartford
Bridge Com-
pany.

and suppression thereof, by said act of 1818, would, in either case, be equally repugnant to the constitution of the *United States*, and void, and destroy any title of *The Hartford Bridge Company;* and the superior court ought so to have adjudged.

10. That *The Hartford Bridge Company*, in their bill, admit and allege a vested title to said franchise, by elder grant, in said towns of *Hartford* and *East-Hartford*, and allege a transfer of a moiety of said title from said *Hartford* to said *East-Hartford*, by said act of 1818, and aver a title in themselves, under said town of *Hartford*, by said lease, as ferry owners; which supposed title is the foundation of their bill, and is void; and *The Hartford Bridge Company* were, and are, incapable of taking or holding such title; and said superior court ought so to have decreed.

11. That the superior court, upon the facts alleged in the bill and found in the cause, ought not to have decreed said injunction, but should have dismissed the bill.

In the report of the former case, as it was then presented and discussed, it was deemed sufficient to state the facts found, with an abridgment of, or reference to, the documents. It now becomes necessary to state the principal allegations in the bill.

The plaintiffs, in their bill, stated, That from a very early period after the settlement of the town of *Hartford*, *viz.*, anterior to 1680, a ferry existed and was supported, by said town, across *Connecticut* river, between the present towns of *Hartford* and *East-Hartford*, which ferry has, from its earliest history to the present time, been recognized, by the General Assembly of this state, as a ferry, which the town of *Hartford* was bound to support, and the emoluments of which it was entitled to receive; that said ferry was, by said state, originally granted to said town of *Hartford*, and was used and enjoyed by them, as their franchise, until 1783; that in that year, the town of *Hartford*, comprising what are now the towns of *Hartford*, *East-Hartford* and *Manchester*, was divided, and the two last-named towns set off as a new town, by the name of *East-Hartford;* that in the charter of said new town, provision was made for the division of the town poor, and also of the property of said town; that in such division, and as a mode of equalizing the property of the town, it was provided, that the privilege of keeping one half of said

ferry should belong to the town of *East-Hartford*, during the pleasure of the General Assembly; the other half of said ferry, together with all the interest therein, subject to said privilege, being and remaining the property of said town of *Hartford*.

The bill then stated, that the plaintiffs were incorporated, by said General Assembly, in 1808, among other things, for the purpose and with power to erect a bridge across said river, at said *Hartford*, and to build a causeway from the *East* end of said bridge through or across the meadows in said *East-Hartford*, and on the completion thereof, to the acceptance of a committee appointed for that purpose, to demand and receive certain rates of toll, established by said General Assembly, for passing the same; that the plaintiffs proceeded to erect, and did construct, a bridge and causeway, under and by virtue of said grant, to the acceptance of said committee, and received tolls, as they were authorized to do, until *March*, 1818, when said bridge was so far damaged, by a flood, that it became impassable, and had to be re-built; that in the construction of said bridge and causeway, the plaintiffs expended a sum exceeding 96,000 dollars, and up to the period of said injury, had received but a small percentage on their investment.

The bill further stated, that by said charter, it is provided, that whenever the tolls shall reimburse to the company the expenses of building and repairing said bridge and causeway, and the expenses of lighting, &c., with an interest of twelve *per cent. per annum*, then said bridge, and causeway, and rates of toll, shall be subject to the regulations and orders of the General Assembly.

The bill then set forth the provisions of the resolve of 1818, and averred, that the contingency therein mentioned as an exception to the discontinuance of the ferries, had never happened; that said bridge was thereafter repaired by the plaintiffs, the piers raised, a draw constructed and the causeway raised and repaired, in conformity with said resolve, and to the acceptance of the commissioners, at an expense of 30,000 dollars; that from that time to this, injuries have accrued to said bridge and causeway, by means of floods and ice, by which further and heavy expenditures have become necessary, and have been made by the plaintiffs; and that

they have not received six *per cent. per annum* upon their capital invested ; that the plaintiffs have, from the passing of said resolve in 1818 to the date of this bill, taken tolls at said bridge, and at the rates prescribed by the General Assembly, and have, at all times, conformed to the provisions of said resolve, and to all other regulations of said Assembly ; that said bridge is, and always has been, very commodious, and abundantly adequate to all public travel ; and that subsequently to said resolve of 1818, the town of *Hartford* released to the plaintiffs all their interest in the ferries between said towns, which interest now remains in and belongs to them.

The bill then averred, that notwithstanding the prohibition so made by the General Assembly, and the pledge by the state so given to the plaintiffs, that they should enjoy and have right to all the travel, for the support and maintenance of said bridge, and the fulfillment of the contract on the part of the plaintiffs, and that said Assembly did, in 1818, express their pleasure that the privilege of keeping one half of said ferry by the town of *East-Hartford* should thereafter forever cease, and did thereby revest the entire interest in said ferry in the town of *Hartford* ; yet, that the town of *East-Hartford* has, at sundry times, and during several successive seasons, to wit, from *September* 1836, to *June* 1841, occupied said ferry, and constantly, during said period, transported passengers across said river, at the places where said ferries had been previously by law established ; that said town of *East-Hartford,* claiming, as the plaintiffs are informed and believe, that the resolve of 1818 is unconstitutional, have again, within a few weeks past, commenced the transportation of passengers and property, by a horse-boat, across said river, and are receiving tolls therefor, and intend, as the plaintiffs believe, to run said boat until restrained by law ; that the town of *East-Hartford,* since they commenced running said boat, have received more than 11,000 dollars, as tolls, from persons and merchandise transported across said river, all of which have been taken from the plaintiffs, who, relying on the faith of the state, have expended more than 126,000 dollars on their works, and to whom there is now due more than 200,000 dollars, to make their dividends equal to what was guarantied to them by the state, before the leg-

islature would do anything to diminish their receipts, and who are liable, every spring, to have their entire bridge swept from them, in a moment.

*Hartford,*
June, 1845.

East-Hartford
*v.*
Hartford
Bridge Com-
pany.

The bill was dated and served, *July* 4th, 1842.

It should be borne in mind, that the facts found in the cause, as stated 16 *Conn. R.* 152—163. including the acts or resolves of the General Assembly, passed in *October*, 1783, *October*, 1808, *May*, 1818, 1836, 1841, and 1842, and other documents, are now, as then, part of the record. One of the documents appended to the report of the committee, and which is a part of the case, but was not mentioned in the statement of the reported case, because nothing was then claimed from it, ought now to be stated. It is a copy of certain votes of the town of *Hartford*, passed on the first *Monday* of *December*, 1835, in the following words:

"Voted, that the increasing population and business of the town, require every reasonable facility of communication with it, and, that all unnecessary obstructions or burdens on the intercourse with the city, are detrimental to its growth and prosperity.

"Voted, that the act of the legislature in 1818, discontinuing the ferry, obtained by the exertions of the *Bridge Company*, in direct opposition to a vote of this town, was unreasonable and unjust, and injurious to the interests of *Hartford*, inasmuch as it deprived the inhabitants of this town and *East-Hartford* of their interests in the ferry, without compensation, subjected our citizens to double the toll they had been accustomed to pay on crossing the river, and conferred on a private company, the enormous and dangerous monopoly of the entire intercourse with this city from the country *East* of the *Connecticut* river.

"Voted, that the representatives from this town in the next General Assembly, be, and they are hereby requested to use their exertions to procure the repeal of the aforesaid act, and the restoration of the ferry."

*Toucey* and *Chapman*, for the plaintiffs in error, contended, 1. That the legislature cannot divest itself of the right or power of eminent domain, nor restrain itself, or its successors, in the exercise of it. In the first place, it is a portion of the sovereignty of the state, vested in the legislature,

*Hartford,*
June, 1845.

East-Hartford
*v.*
Hartford
Bridge Com-
pany.

by the constitution, subject to one restriction only, that of compensation; and it is necessarily, and at all times, the same identical power. It can neither be diminished nor enlarged, by the legislative body; since that would be an alteration of the constitution. For the same reason also, for which it is granted to the depositary, it must be preserved entire, to answer equally at all times the ends of government. Secondly, this power, though it may not be restricted, may be exercised; and in the exercise of it, a grant may be made of an exclusive right, which of itself becomes property; is subject to the same sovereign right of eminent domain, by a necessary exception implied in every grant; and it may be taken, in whole or in part, upon the condition of compensation. *Piscataqua Bridge* v. *New-Hampshire Bridge,* 7 *N. Hamp. R.* 35. Thirdly, a covenant, contract or enactment, restrictive of the right of eminent domain, would be inoperative against future legislation. Should land be granted with a covenant that it should never be taken for a fortification, a road or any public use, the restriction would be inoperative. A covenant that no road, bank, bridge or ferry, should hereafter be granted in the state, when public convenience and necessity should require it, would be void, as against a future grant. Fourthly, the distinction is between a grant, which confers property, and is subject to the right of eminent domain, and a covenant or contract which cannot be violated, either with or without compensation. If a covenant that there should be no road, no bridge, no ferry, hereafter granted, be valid, then none can be granted, whatever the necessity, because compensation does not authorize the breach of a contract.

2. That the act of 1818, so far as it inhibited the ferry, was a mere restrictive enactment, which could not deprive a future legislature of the power of establishing it, whenever, in their judgment, the public convenience and necessity should require it. In the first place, it was not the grant of a bridge within exclusive limits, including the ferry. The plaintiffs below had no exclusive grant of a bridge beyond the abutments. The legislature might cover the river with bridges, on both sides, at pleasure. Secondly, it was not the grant of an exclusive ferry right, within certain limits, including the former ferry. The legislature could, at any time,

grant to individuals or incorporated companies as many fer-
ries as they should please, on either or both sides of the
bridge.   Thirdly, it was not a grant of the tolls collected at
the ferry, or any portion of them ; because if they are not
the property of the former grantees, the legislature can, at
any time, grant them to a new ferry company, or bridge
company, or to individuals.   Fourthly, it was not the grant of
the franchise of a ferry, or the franchise of a bridge.   The
company did not ask either.   They had already the franchise
of a bridge, and were bound to build and repair, in the mode
required.   The obligation was already upon them.   They
were authorized to change their tariff of tolls, which they
might do or not do, at pleasure.   The object of the act was,
to abolish the property of *Hartford* and *East-Hartford*, as
their petition to the General Assembly and the act itself will
fully show.   Fifthly, an enactment that *A* or *B* shall never
have a ferry, or receive the grant of a ferry, which the legis-
lature may grant to any body else, is not a grant.   It does not
confer a franchise.   It does not create property.   It confers
nothing.   It is nothing but a partial and arbitrary restriction
of the power of eminent domain, in reference to its future
grantees or its future agents.

3. That the bill is insufficient to sustain an injunction, by
the plaintiffs below, as *ferry owners.*   In the first place, they
have no capacity.   Secondly, they have no possession. 7
*Conn. R.* 50, 51. 53, 54.   Thirdly, they have not been distur-
bed in the use of such franchise.   Fourthly, the supreme
court say they could not claim as ferry owners.   16 *Conn.*
*R.* 171.

4. That the bill is insufficient to sustain an injunction, by
the plaintiffs below, as *bridge owners ;* because it admits the
prior ferry title, as a vested right, in language as explicit as
can be used.   In the first place, it admits the date of the title
to be anterior to 1680.   Secondly, that its origin was a *grant,*
by the state, to the town of *Hartford.*   Thirdly, that the
right was protected by user, *ab origine.*   Fourthly, that it
was *divided* between the towns.   Fifthly, that it was *held as*
*property afterwards*, at all times.   Sixthly, that it was always
*recognized as such*, by the General Assembly.   Seventhly,
the supreme court, on this bill, held it *corporate property*
*strictly.* 16 *Conn. R.* 172.   Eighthly, the court held *the tolls*

*Hartford,*
June, 1845,

East-Hartford
*v.*
Hartford
Bridge Com-
t pany.

HARVARD LAW LIBRARY

*Hartford,*
June, 1845.

East-Hartford
*v.*
Hartford
Bridge Com-
pany.

*collected* at the ferry, to be *property.* Ninthly, that the act of 1818, transferred a portion of them to the *Bridge Company.* Tenthly, that thus transferred, they are protected, as property, by the constitution of the *United States.* It is impossible, therefore, *upon this bill,* to make any question whether the franchise of a ferry was *private property absolutely vested in the grantees.*

5. That if the franchise be a vested right, it is impossible to say, that the act of 1818 suppressing it, is not void. In the first place, it is in violation of a contract in resuming a grant. Secondly, it takes private property for supposed public use, without compensation. Thirdly, it takes the property of one corporation, and gives it to another. Fourthly, the supreme court held the taking away of the same *tolls,* as *constructively granted,* to be unconstitutional, in this very case.

6. That the plaintiffs below have no title. The title is out of them, both upon the bill, and upon the facts in the case; and either objection is fatal. They must recover, by the strength of their own title, not by the weakness of the defendants. If the act of 1818 terminated the right of *East-Hartford,* it vested the whole right in *Hartford;* and whether the whole right be in one or both, it is equally fatal to the title of the *Bridge Company.* If the right exists in either or both, it necessarily excludes the adverse right. If the right exists, there can be no right that it shall not exist. It is not, therefore, necessary to enquire whether, upon the partition of the ferry property in 1783, the tenure could be altered; nor whether it be, or be not, against the express words, the avowed object and the plain intent of the act of 1818, to suppose it transferred the whole title to *Hartford;* because, be the result either way, the effect is precisely the same—to exclude any title in the plaintiffs.

7. That the case goes much further. The original *title* is revived or disembarrassed, by force of the acts of 1836 and 1842; which are constitutional and valid laws. In the first place, if the franchise of the ferry was a vested right, as admitted on the bill, the acts restoring it are free from all objection. Secondly, if the restriction of the act of 1818 was inoperative against future legislation, as already shown, then these acts were valid.

8. That if these acts were within the proviso of the act of

*Hartford,*
June, 1845.

East-Hartford
*v.*
Hartford
Bridge Com-
pany.

1818 reserving the legislative powers, then they are valid, notwithstanding the clause in the act of 1808, providing that after reimbursement, with 12 *per cent.* interest, the *bridge, the causeway and rate of toll,* shall be subject to the orders of the General Assembly, except in a certain contingency. In the first place, this clause did not secure the *Bridge Company* against *a diversion of tolls, by means of a ferry or a bridge.* It did not so qualify the proviso, or the act of 1808. Notwithstanding the act, the legislature might divert the tolls, by as many bridges or ferries as they should see fit to grant. The *right* of the legislature to *divert the tolls by bridges or ferries,* remained *complete, perfect and unlimited.* This was settled in the case of the *Charles River Bridge* v. *The Warren Bridge,* 11 *Peters* 420. Secondly, the supreme court held, that it did not secure the *bridge or causeway* from legislative interference, though expressly named. Thirdly, the utmost effect that could be given to the *inference* derived from the language of this clause, is, to secure the rate of tolls from alteration. Fourthly, a mere inference must yield to an express enactment. Fifthly, it is the office of a proviso to qualify the body of an act ; and so the court held in reference to the bridge and causeway. Sixthly, the proviso reserving legislative power, is to be construed *liberally* in favour of the reservation. Seventhly, a reference in the proviso of 1818 to the act of 1808, could not annex to the proviso a restriction which is not in the act referred to. Eighthly, expressly reserved legislative power, cannot be taken away, by inference. *Charles River Bridge* v. *Warren Bridge,* 11 *Peters,* 420.

9. That these acts effectually *declared* the ferry right to be in *East-Hartford,* or restored it, by a valid enactment. In the first place, the act of 1836 is essentially a *declaratory* law; and in effect declared the title not to have been transferred to *Hartford*; and enacts, that the title is vested in both towns. The repeal of the suppression leaves the title in its former state, and proceeds on the ground of its continuance, notwithstanding the former act. Secondly, if the act of 1818 is to be regarded as transferring the title from *East-Hartford* to *Hartford,* the act of 1836 restored it, with the consent of *Hartford,* expressed in the vote and instructions directing her agents to procure it to be done. *Vide* the vote

*Hartford,*
June, 1845.

East-Hartford
*v.*
Hartford
Bridge Com-
pany.

of the town of *Hartford*, passed on the 1st *Monday* of *December*, 1835.    Thirdly, *The Bridge Company* could not object that the act of 1836 transferred the title from *Hartford* to *East-Hartford*.    They had no interest in the question, whether the title was in one or both.    It did not concern them.    Fourthly, even if the only party interested, the town of *Hartford*, had objected, instead of consenting and procuring the act to be passed, the legislature had the undoubted power to pass a declaratory or retrospective law to the effect that the title of *East-Hartford* was not terminated or transferred, but suspended only, and now revived again.

*Hungerford*, (with whom was *Parsons*,) for the defendants in error, contended, in answer to the first and second errors assigned, 1. That it was not alleged in the bill, nor found by the committee or court, that the town of *East-Hartford* ever had any interest in the ferry, except at the pleasure of the General Assembly ; and that town had, in fact, no other interest.    16 *Conn. R.* 172.    *Windham* v. *Portland*, 4 *Mass. R.* 384.    *Hampshire* v. *Franklin*, 16 *Mass. R.* 76.    *Union Baptist Society* v. *Candia*, 2 *N. Hamp. R.* 20.    *New-Chester* v. *Bristol*, 3 *N. Hamp. R.* 71.

2. That, as to the 3rd, 6th and 9th errors assigned, the acts of 1818 and 1841 were both, in respect to the town of *East-Hartford*, valid, and not opposed to the constitution of the *United States*.    *Bank of Hamilton* v. *Dudley*, 2 *Pet.* 526.    *Clark* v. *Ellis*, 2 *Blackf.* 8.    *Sinclair* v. *Jackson*, 8 *Cowen*, 543.    *Briscoe* v. *The Bank of the Commonwealth of Kentucky*, 11 *Pet.* 257.    16 *Conn. R.* 171.

3. That as to the 7th error assigned, the act of 1818 was intended, in respect to *East-Hartford*, to abolish the right to continue the ferry, except upon the contingency therein mentioned, and had that effect.    See the cases cited under the last head.

4. That as to the 4th, 5th and 8th errors assigned, the acts of 1836 and 1842 neither constituted any new grant or confirmation of any older title, nor was either of them a declaratory law, in form or effect.    Both of them were, in respect to the *Hartford Bridge Company* and the town of *East-Hartford*, repugnant to the constitution of the *United States*,

and void. *Dartmouth College* v. *Woodward*, 4 *Wheat.* 518. *Allen* v. *McKeen*, 1 *Sumn.* 276.

*Hartford,*
June, 1845.

East-Hartford
*v.*
Hartford
Bridge Com-
pany.

5. That as to the 10th error assigned, it is to be observed, in the first place, that the plaintiffs below set up no vested title in the town of *East-Hartford.* Secondly, they alleged, and the committee and the court have found, a good title in them, as against the town of *East-Hartford,* independently of any title derived from the town of *Hartford.* And thirdly, they alleged, and the committee and the court have found, a good title in them, as against the town of *East-Hartford,* derived from the town of *Hartford;* and if the acts of 1836 and 1841 were, in respect to *Hartford,* unconstitutional, *East-Hartford* could take no advantage of it. See the cases cited under the second head.

6. That the 11th error assigned, is equally groundless. In the first place, the decree is in precise conformity to the decision of the supreme court. 16 *Conn. R.* 151–179. Will the same court now reverse that decision? But secondly, the assignment is *too general,* and cannot be regarded by the court. *Reg. Gen.* 9 *Conn. R.* 452.

CHURCH, J. A decree of the superior court has been made in this case, conformably with the advice of this court, at its *June* term, 1844; and now the cause is again before us, on a motion in error from the decree thus made.

The plaintiffs in error do not profess to request us to review or reverse any of the essential principles so recently recognized by us; although it is obvious, that several of the points now made are in conflict with our opinions before expressed.

No question is here raised as to the legal construction of either the original or amended charters of the *Bridge Company.*

By our former decision, we said, that the ferry between the towns of *Hartford* and *East-Hartford* was a beneficial franchise, and not a burden imposed by law upon them; subject, however, to the same legislative supervision and controul as other ferries in the state. And it was properly conceded, by counsel and parties, that the right of the town of *Hartford* to the ferry, could not be constitutionally taken away, without compensation, or the consent of that town.

*Hartford,*
June, 1845.

East-Hartford
*v.*
Hartford
Bridge Com-
pany.

This principle we repeat ; and upon it the claim of the town of *East-Hartford* seems now chiefly to be based.

One claim is, because there was a vested franchise in the town of *Hartford,* that the *Bridge Company* is, in effect, estopped, not only from claiming a title in itself, but also from denying the title of *Hartford* to the ferry. The *Bridge Company* does not contest any rights with *Hartford,* in this controversy ; nor does it insist upon any right of its own to the ferry franchise. It does not, to be sure, admit, that the town of *Hartford* can claim any thing in opposition to the company, since its lease or contract of *May,* 1842. The ground of complaint against the town of *East-Hartford,* is, that as bridge owners, the plaintiffs below are entitled to the full enjoyment of their bridge franchise, conferred by their several charters, and especially enlarged by the legislative resolve of 1818 ; that they are entitled to receive at their bridge the tolls from passengers crossing *Connecticut* river between the towns of *Hartford* and *East-Hartford,* without disturbance ; and that they are essentially molested in the enjoyment of these rights, by a diversion of travel and tolls from the bridge to the ferry, which ferry the town of *East-Hartford* illegally persists in keeping up. The question is, as to the right of *East-Hartford* thus to continue the ferry, and not as to any present rights of the town of *Hartford.*

We shall not here again discuss the question, whether at common law, an individual or a corporation may lawfully do any thing, which shall operate directly and essentially as a disturbance of another's franchise. On this point we refer to the authorities formerly cited, and also to 3 *Bla. Com.* 236. 1 *Chitt. Gen. Pr.* 724. But whatever may be the common law on this subject, the resolve of 1818, if constitutional, ought to protect the *Bridge Company.* It declares, that " after the company shall have repaired the bridge &c. the ferries by law established between the towns of *Hartford* and *East-Hartford* shall be discontinued, and said towns shall never thereafter be permitted to transport passengers across said river" &c. The obvious purpose of this enactment, was, to enlarge the franchise of the *Bridge Company,* and to secure to it the exclusive right to transport passengers across the river, at the bridge, and to receive the increased tolls therefor.

But the town of *East-Hartford* here assumes, that this re-

solve was an attempt, by the legislature, to divest itself of the power of eminent domain, and is therefore void ; and that the legislature, notwithstanding, has power to revive the ferry, without making provision for compensation to the *Bridge Company*. We suppose this matter was set at rest, by our late decision in this case, the very basis of which was, that the resolve of 1818 constituted a contract constitutionally obligatory upon the state, and therefore inviolable. But, what is meant by the position, that the legislature cannot divest itself of the power of eminent domain? Nothing more, we presume, than that the legislature, by its own act, cannot irreclaimably abandon a power, which essentially belongs to it, or which has been constitutionally imposed upon it. But this has not been done, by the resolve of 1818. It is not denied, that the legislature may not only revive the ferry, but discontinue the bridge itself, whenever the public interests shall require it, by providing an adequate compensation. This we have just now decided, in the case of *The Enfield Bridge Company* v. *The Hartford and Springfield Rail-Road Company.* (*a*) The complaint is, that the ferry was attempted to be revived, without providing compensation. The object and effect of suppressing the ferry, was, to enlarge the bridge franchise ; and this the legislature could as constitutionally do, as to confer an original franchise, without interrupting its right of eminent domain. It is quite too late now to contend, that the legislature may not modify or restrict the future exercise of its own powers. It always does this, when it makes a contract, which it cannot impair. And whether such contract be executed or executory, it matters not. There is perhaps no more essential and perfect right of sovereignty, than the right and power of taxation ; and yet a legislature may, by contract, even relinquish this right over a limited and specified territory, and for an object promotive of the public good. *New-Jersey* v. *Wilson,* 7 *Cranch* 168. *Atwater* v. *Woodbridge,* 6 *Conn. R.* 223. *Osborne* v. *Humphrey,* 7 *Conn. R.* 335. *Landon* v. *Litchfield,* 11 *Conn. R.* 251. We must, therefore, repeat, notwithstanding this objection growing out of the right of eminent domain, what we have before said, that the provision in the resolve of 1818, which enacted, that the towns

*Hartford,*
*June, 1845.*

East-Hartford
*v.*
Hartford
Bridge Company.

(*a*) *Ante,* 40.

*Hartford,
June, 1845.*

*East-Hartford
v.
Hartford
Bridge Com-
pany.*

of *Hartford* and *East-Hartford* should never thereafter be permitted to transport passengers across the river, unless upon the happening of certain contingencies, so far as *East-Hartford* was thereby affected, was an essential part of a contract made with the *Bridge Company,* which could not be impaired, without compensation. And yet the town of *East-Hartford* persists in its claim to the ferry privilege. Because, say they, as there was a conceded and vested franchise in the town of *Hartford,* which could not be impaired, by the resolve of 1818, it was not suppressed, even as against them. To support this position, we think it is incumbent upon *East-Hartford* to show a right in itself, derived from the town of *Hartford,* or a right in some way sustained by the *Hartford* title. How is this attempted? Let it be conceded, that the resolve of 1818 was unconstitutional and void as to *Hartford,* because its rights were beyond the reach of the General Assembly. The title of *East-Hartford* rested upon no such tenure; it was a title *durante bene placito;*—it was not derived from *Hartford,* nor created by any act of *Hartford,* but entirely by the legislative act of division of the towns, passed in 1783. *East-Hartford* then received what the legislature gave, and no more;—a right to use the ferry, so long only as the legislature pleased. The act of 1818 declared the pleasure of the legislature; and the right of *East-Hartford* ceased. If this act or resolve was unconstitutional as to *Hartford,* and so far to be disregarded, it was not so as to *East-Hartford;* and therefore, it must have full effect, in all its constitutional provisions, against the latter town. *Bank of Hamilton* v. *Dudley's* lessee, 2 *Peters* 526. Therefore, as *Hartford* cannot complain that the legislature has declared its pleasure as to *East-Hartford,* neither can *East-Hartford* complain, or claim any thing, because the rights of *Hartford* exist, while their privileges are extinguished.

We have said, that *East-Hartford* derived no title from any act of *Hartford.* The vote of the town of *Hartford,* passed on the first *Monday* of *December,* 1835, invested *East-Hartford* with no rights, nor did it propose to do so; nor did it, in any way, connect, or propose to connect, the interests of the two towns in the ferry privilege, so that these interests should at all be dependent upon each other. That vote was no more than a strong expression of the opinion of

the town, that the suppression of the ferry had been injurious to the public, and was an unjust measure, and an equally strong expression of its wishes, that the ferry should be restored. We cannot suppose, if the entire franchise belonged to *Hartford*, that that town, without compensation, would propose to relinquish to *East-Hartford* the one half of so valuable an estate. The resolution of 1836 followed; and by it, the ferry was again revived; but this act derived neither force nor character from the previous vote of *Hartford*; nor can it, by any construction, be extended further, than if no such vote had been obtained, nor than if it had passed upon the application of any other town, or body of citizens. What is that resolution of 1836, which the town of *East-Hartford* now claims gave to them an indefeasible title to the ferry, no longer dependent upon the will of the legislature? It was just what the town of *Hartford* asked for, and no more; it was a repeal of so much of the resolve of 1818, as had abolished the ferry. The only legal effect of this, was, to remit the towns to their former rights; to give back to *East-Hartford* its franchise, during the pleasure of the General Assembly, and no longer—if the town of *Hartford* can be supposed to have assented to this.

The ferry revived again under the supposed authority of the resolution of 1836, and continued until *May*, 1841, when that resolution was repealed, and the pleasure of the legislature, upon which the continuance of the franchise of *East-Hartford* was still dependent, was again expressed, and the rights of *East-Hartford* again ceased. Before the General Assembly again acted on this subject, to wit, on the 18th of *May*, 1842, the town of *Hartford*, in which the entire ferry privilege, if any, remained, relinquished it entirely to the *Bridge Company*, upon a full and satisfactory compensation received. The ferry franchise was now relinquished, by the only corporation which had any legal claim to it. The bridge franchise was now perfect, and the company in the undisturbed enjoyment of it.

In 1842, after the town of *Hartford* had relinquished its rights, and when *East-Hartford* had no further pretence to be protected under the rights of *Hartford*, the legislature, without compensation, attempted once more to invade the franchise of the *Bridge Company*, by restoring the ferry.

*Hartford,*
June, 1845.

East-Hartford
*v.*
Hartford
Bridge Com-
pany.

We have already determined this proceeding to be uncon-stitutional.

If it be admitted, as it seems to be, by all parties, that the resolve of 1818, by determining the rights of *East-Hartford,* vested the entire ferry franchise in *Hartford,* the legislature could not, without providing for a compensation, restore the one half of it to *East-Hartford,* by the resolution of 1836; and if that resolution had any effect, it was only to revive the ferry in favour of *Hartford,* unless the vote of the town of *Hartford* before referred to, may be considered as the con-sent of the town to relinquish the one half of a valuable priv-ilege without compensation. There is nothing expressive of such an intention in the language of that vote.

But if the title of the town of *Hartford* afforded a protec-tion to *East-Hartford* originally, how could it do thus, after the former town had relinquished its right? The act of the le-gislature suppressing the ferry in 1841, might have been inef-fectual until compensation was made; but in *May,* 1842, and before the legislature again acted, the town of *Hartford* received a full and adequate compensation, and thus the act of 1841 became operative upon every body, and the privi-leges conferred by it could not again be taken away, by the act of 1842, without compensation made to the *Bridge Com-pany.*

Upon a careful review of our former opinion, as well as an attentive examination of the arguments now urged upon us, a majority of us are of opinion, that there is no error in the judgment complained of.

In this opinion, WAITE and STORRS, Js., concurred.

WILLIAMS, Ch. J., being interested in the event of the suit, was not present when the case was argued, and gave no opinion.

HINMAN, J., dissented.

Judgment affirmed.